VILLAGE OF WOODMERE, Appellant,

v.

KELBACH, Appellee.

[Cite as *Woodmere v. Kelbach* (1995), 101 Ohio App.3d 278.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 66873.

Decided Feb. 21, 1995.

*Charles E. Merchant,* Woodmere Law Director, for appellant.

*Amy C. Kelbach, pro se,* appellee.

JAMES M. PORTER, Judge.

Plaintiff-appellant, the village of Woodmere, appeals from the Bedford Municipal Court's finding of not guilty in its prosecution of defendant Amy C. Kelbach for passing a stopped school bus proceeding in the opposite direction and discharging school children on Chagrin Boulevard. The court found Chagrin Boulevard to be a four-lane highway rather than a two-lane highway as the

village contended and found that defendant was not obliged to stop. We find no error in the trial court's determination and affirm the judgment.

This case arose out of an episode on October 22, 1993, when defendant was issued a traffic citation for passing a stopped school bus unloading children. She was charged with violating Woodmere Ordinance 331.38, which is identical with R.C. 4511.75.

The facts as found by the municipal judge on the first page of his judgment entry stated:

"The facts as presented by the parties are straightforward. It is alleged that a school bus operating west on Chagrin Boulevard, State Route 422, came to a stop. In doing so it first activated a set of amber lights, followed by red warning lights and then swung out a stop sign. The bus was carrying school-age children at the time and had stopped to allow them to get off the bus on their residence side of the roadway.

"Defendant maintains that as she passed the bus from the opposite direction only the yellow lights were activated and hence she was under no obligation to stop. She also raises the issue of whether or not she was obligated to stop in any event given the language of section 4511.75(C) Ohio Revised Code * * *."

Notwithstanding defendant's contentions, the arresting officer testified that "[t]he red lights came on, stop sign came out, and said vehicle in question passed the school bus with the red lights on and the stop sign."

The court considered the decisive issue raised by defendant to be "whether or not she was obligated to stop in any event given the language of section 4511.75(C) Ohio Revised Code." Defendant contended that Chagrin Boulevard, within the village of Woodmere, is a highway divided into four or more traffic lanes and that a driver approaching a school bus from the opposite direction need not stop under the statute. There was evidence that Chagrin Boulevard is a two-lane highway marked by a solid double yellow line down the center of a thirty-six-foot-wide roadway. There are signs announcing, "This Road is Not a Four-lane Highway." There were also "Stop for School Bus Loading and Unloading" signs located on both sides of Chagrin Boulevard in Woodmere.

After analyzing the posted signs, traffic signals, the relevant traffic regulations and other pertinent matters relating to the use of Chagrin Boulevard, the court found that Chagrin Boulevard was operated as a *de facto* four-lane highway as allowed by Woodmere officials and the Ohio Department of Transportation ("ODOT"), and that "the traffic laws should be intelligently and consistently applied to it as a four-lane highway." The court found defendant not guilty.

This court granted the village leave to appeal under App.R. 5(A) and R.C. 2945.67 to address the substantive-law rulings which may recur in the enforce-

ment of the statute. *State v. Bistricky* (1990), 51 Ohio St.3d 157, 555 N.E.2d 644, syllabus. We address the merits of the appeal. The defendant has filed no brief in opposition and is under no jeopardy from the appeal. The village's sole assignment of error states as follows:

"I. The trial court erred in its interpretation of law that Chagrin Boulevard, State Route 422, within the village of Woodmere is a four-lane roadway for purposes of enforcing ordinance section 331.38 of the village of Woodmere that mirrors O.R.C. 4511.75, passing a school bus stopped to discharge/receive students."

The issue on appeal turns on whether or not the trial court was correct in finding that Chagrin Boulevard is a four-lane highway, which would excuse defendant from the obligation to stop when approaching an unloading school bus from the opposite direction.

This question involves an interpretation and application of R.C. 4511.75 (the same as Woodmere Ordinance 331.38), which states as follows:

"(A) The driver of a vehicle * * * upon meeting or overtaking from either direction any school bus stopped for the purpose of receiving or discharging any school child * * * shall stop at least ten feet from the front or rear of the school bus and shall not proceed until such school bus resumes motion, or until signaled by the school bus driver to proceed.

"It is no defense to a charge under this division that the school bus involved failed to display or be equipped with an automatically extended stop warning sign as required by division (B) of this section.

"(B) Every school bus shall be equipped with amber and red visual signals meeting the requirements of section 4511.771 of the Revised Code, and an automatically extended stop warning sign of a type approved by the state board of education, which shall be actuated by the driver of the bus whenever but only whenever the bus is stopped or stopping on the roadway for the purpose of receiving or discharging school children * * *. The visual signals and stop warning sign shall be synchronized or otherwise operated as required by rule of the board.

"(C) Where a highway has been divided into four or more traffic lanes, a driver of a vehicle * * * need not stop for a school bus approaching from the opposite direction which has stopped for the purpose of receiving or discharging any school child * * *. The driver of any vehicle * * * overtaking the school bus shall comply with division (A) of this section.

"(D) School buses operating on divided highways or on highways with four or more traffic lanes shall receive and discharge all school children * * * on their residence side of the highway.

"(E) No school bus driver shall start his bus until after any child * * * who may have alighted therefrom has reached a place of safety on his residence side of the road."

The lower court's determination that Chagrin Boulevard is a four-lane highway involves a mixed question of law and fact, as the court looked to the traffic statutes, ordinances, regulations, day-to-day operations and surrounding circumstances in reaching judgment. In reviewing a judgment comprising an issue of mixed law and fact, "we accept facts found by the trial court on some competent credible evidence, but freely review application of the law to the facts." *State v. Howard* (Mar. 4, 1994), Scioto App. No. 93CA2136, unreported, at 5, 1994 WL 67688; see, also, *State v. Wilson* (Aug. 3, 1994), Ross App. No. 93CA1976, unreported, at 2, 1994 WL 411367; *State v. Stargell* (Oct. 15, 1992), Montgomery App. No. 13021, unreported, at 6, 1992 WL 288784.

It is plain to see from the evidence submitted below, the transcript of the hearing, the exhibits, the photographs, and the matters of which the court took judicial notice, that there is substantial evidence which would sustain the trial court's finding of fact that Chagrin Boulevard is operated on a day-to-day basis as a four-lane highway, *i.e.*, supporting the court's conclusion that it was a *de facto* four-lane highway. The village points to various technical statutory definitions and administrative regulations of highway manuals, which it argues establish that Chagrin Boulevard is a two-lane highway. Despite the village's arguments, however, the photographs indicate that vehicles travel on Chagrin Boulevard as if it is a four-lane highway, in spite of the posted signs stating that the highway is not a four-lane highway. Also, although the traffic lanes do not meet the ODOT width requirements for four-lane highways and are not separately marked by white stripes, the traffic signals are set up as for a four-lane highway. Furthermore, the lower court's review of its docket indicated that from 1992 to 1994 no case has come before the court "wherein a defendant has been charged with improper passing" on the alleged two-lane highway, although it is happening frequently. This seems to indicate that two-lane travel down the roadway is not enforced.

Under the circumstances, we defer to the fact-finding prerogatives of the trial judge and find no error in the lower court's application of the law to the facts. It makes no sense to contend that Chagrin Boulevard is a two-lane highway when on a day-to-day basis it operates as a four-lane highway. Furthermore, as the trial court observed, if the highway is found to be a two-lane highway, it would create a more perilous situation for school children, as school busses would no longer be required to drop children off on the side of the road upon which they live. R.C. 4511.75(D); Woodmere Ordinance 331.38(d). This might require

children to cross the heavily traveled road, which the public treats as a four-lane highway.

The unreported cases the village cites do not shed light on the legal issue here. They determined whether there was sufficient evidence to convict defendants of passing a school bus stopped and unloading school children. *State v. Stuckey* (Mar. 13, 1992), Williams App. No. 91WM000009, unreported, 1992 WL 48520; *State v. Petti* (Sept. 5, 1990), Hancock App. No. 5–89–19, unreported, 1990 WL 131956. These cases do not dispose of the four-lane v. two-lane issue that the village raises, which appears to present a novel issue.

In conclusion, we find that Chagrin Boulevard in Woodmere has the indicia of *both* a four-lane and a two-lane highway, and the trial court did not abuse its discretion or violate the law by finding the highway to be a four-lane highway and defendant not guilty under the circumstances.

The village's assignment of error is overruled.

*Judgment affirmed.*

JAMES D. SWEENEY, P.J., and DYKE, J., concur.